**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-4450

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

APOLONIO TORRES-REYES, a/k/a Freddy Torres-Fuentes, a/k/a Apolonio Reyes
Torres,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at
Greenville.  Malcolm J. Howard, Senior District Judge.  (4:17-cr-00062-H-1)

Argued:  September 18, 2019                          Decided:  March 2, 2020

Before THACKER, RICHARDSON, and RUSHING, Circuit Judges.

Vacated and remanded by published opinion.  Judge Richardson wrote the opinion, in
which Judges Thacker and Rushing joined.

**ARGUED:**  Jennifer Claire Leisten, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Raleigh, North Carolina, for Appellant.  Kristine L. Fritz, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan
DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER,
Raleigh, North Carolina, for Appellant.  Robert J. Higdon, United States Attorney, Jennifer
P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES
ATTORNEY, Raleigh, North Carolina, for Appellee.

RICHARDSON, Circuit Judge:

Apolonio Torres-Reyes pleaded guilty to illegally reentering the United States. The district court then sentenced him to 37 months' imprisonment, a term at the bottom of the Sentencing Guidelines range. Torres-Reyes challenges his sentence as procedurally unreasonable. He contends that the district court failed to address the four grounds he raised to support his requested variance from the Guidelines range and gave an inadequate justification for the sentence it imposed. As explained below, the district court's record fails to assure us that the sentencing court considered at least two of the grounds for a variance. We thus vacate the sentence.

## I.

Torres-Reyes is a Mexican citizen who first came to the United States illegally in 1986, when he was sixteen-years-old. Almost ten years later, in 1995, he was convicted in California of three counts—one for each drug—of possession with the intent to sell cocaine, heroin, and methamphetamine. He was deported back to Mexico that same year.

After Torres-Reyes returned to the United States, he was arrested by Border Patrol in 2001 and allowed to leave voluntarily. But the next day, Torres-Reyes was caught trying again to reenter the United States illegally near Laredo, Texas. After again leaving voluntarily, he returned undetected later in 2001 and settled in Greenville, North Carolina.

While in North Carolina, Torres-Reyes was arrested and charged with trafficking cocaine in 2006. But after providing an alias, he was released on bond and then failed to appear in court, leading to a bench warrant for his arrest.

2

In 2016, Torres-Reyes was arrested again, this time for resisting a police officer and illegally possessing a firearm. Despite again providing an alias, a review of his fingerprints confirmed that Torres-Reyes had been deported before. Torres-Reyes then admitted to illegally reentering the United States in 2001.

In 2017, Torres-Reyes pleaded guilty in state court to his 2006 cocaine trafficking charge, for which he had failed to appear. He also pleaded guilty in state court to his 2016 possession of a firearm by a felon. The state sentenced Torres-Reyes to 13 to 25 months in prison.

Then, in federal court, Torres-Reyes pleaded guilty to illegal reentry in violation of 8 U.S.C. § 1326(a). The presentence investigation report calculated Torres-Reyes's offense level as 17 with a criminal history category as IV, creating a Guidelines range of 37 to 46 months.

Before sentencing, Torres-Reyes filed a written motion for a downward departure and/or variance, in which he objected to including his 1995 California drug convictions as part of his criminal history. He claimed that those convictions were "stale," having been "completed over 15 years prior" to the commencement of the instant offense. J.A. 69. *See* U.S.S.G. § 4A1.2(e)(1) (counting prior sentences imposed within "fifteen years of the defendant's commencement of the instant offense"). In essence, he argued that his illegal-reentry offense started on the date when he "was found" in the United States (2016) not the year that he admitted to illegally reentering the country (2001). *See* 8 U.S.C. § 1326(a) ("any alien who" has been deported or removed and later "enters, attempts to enter, or is at any time found in, the United States" shall be fined or imprisoned).

3

If the illegal-reentry offense did not start until 2016, then his 1995 convictions were beyond the fifteen-year lookback period for counting prior convictions. Separately, he argued that he should be granted a downward departure or variance because rejecting his objection would cause an over-representation of his criminal history and create unwarranted sentence disparities between those defendants whose date of entry was known and those for whom it was unknown.

The district court held a sentencing hearing, heard argument on how to consider the 1995 drug convictions, and rejected Torres-Reyes's objection. J.A. at 38–41.[1] As a result, the 1995 drug convictions were counted in the criminal history calculation.

Next, the court explained its familiarity with the defendant—including his family and his multiple prior deportations—and the information in the defendant's motion for a variance. And the court asked defense counsel to discuss "where I should go within the range [of 37 to 46 months] and why." J.A. 42. Rather than address that question, defense counsel again asked for a departure down to a sentence closer to 18 months because "the various factors of 3553(a) can be met with that minimal sentence." *Id.* Defense counsel argued that a sentence below the Guidelines range was appropriate because it would bring "substantial savings to United States taxpayers regarding his incarceration and feeding and maintenance over that time period" and because Torres-Reyes was already serving a state-court sentence. *Id.* Defense counsel's explanation that the defendant was already being

---

[1] Torres-Reyes does not advance this objection on appeal.

4

punished in the state system for his two convictions led to a discussion with the court about the scheduled release date for those convictions.

After a brief apology and allocution by the defendant, the Government explained why his prior record of repeated criminal offenses and illegal reentry warranted a sentence toward the middle of the Guidelines range. The court then imposed a bottom-of-the-range term of confinement: 37 months. And the court ordered that term to run consecutively with Torres-Reyes's 2017 state-court sentence. Torres-Reyes timely appealed, and we have jurisdiction. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a).

## II.

This Court "review[s] all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007); *United States v. Cox*, 744 F.3d 305, 308 (4th Cir. 2014). Generally, we review the sentence for both its procedural and substantive reasonableness, although only the former is at issue in Torres-Reyes's case. To determine whether a sentence is procedurally reasonable, "this Court considers whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019); *see also United States v. Provance*, 944 F.3d 213, 219 (4th Cir. 2019) (explaining that the district court must, in announcing the chosen sentence, provide a "sufficient explanation to allow this Court to conduct meaningful appellate review").

A district court must conduct "an 'individualized assessment' of the facts and arguments presented." *United States v. Blue*, 877 F.3d 513, 518 (4th Cir. 2017) (citing *Gall*, 522 U.S. at 50). And an individualized assessment means that the district court must "consider the defendant's nonfrivolous arguments for a downward departure, impose an individualized sentence based on the characteristics of the defendant and the facts of the case, and explain the sentence chosen." *Id.* "The adequacy of the sentencing court's explanation depends on the complexity of each case" and the facts and arguments presented. *Id.*; *see Chavez-Meza v. United States*, 138 S. Ct. 1959, 1964 (2018).

A district court's analysis thus begins with the facts and arguments presented to it. Under this Circuit's precedent, "a district court must address or consider all non-frivolous reasons presented for imposing a different sentence and explain why he has rejected those arguments." *Ross*, 912 F.3d at 744. And while "it is sometimes possible to discern a sentencing court's rationale from the context surrounding its decision," the reviewing court "'may not guess at the district court's rationale, searching the record for statements by the Government or defense counsel or for any other clues that might explain a sentence.'" *Id.* at 745 (quoting *United States v. Carter*, 564 F.3d 325, 329–30 (4th Cir. 2009)).

Here, Torres-Reyes filed a written motion arguing that a lower sentence was appropriate because the court should not use his admitted date of illegal reentry as the start of his illegal reentry offense. According to Torres-Reyes, the prior offenses could not legally be included as part of his criminal history under the Guidelines. And, alternatively, the effect of including those prior convictions should lead the court to depart or vary

6

downward. J.A. 31–34, 70.[2] As the defendant explained, counting his three prior drug offenses from 1995 would lead to an over-representation of his criminal history and create sentencing disparities.

The district court properly considered the legal objection and explained the grounds for rejecting it. After explaining that it had read the objection and motion filed by the defendant, the court expressed initial disagreement before expounding on its rationale. Then defense counsel was invited to expand on the briefing. Defense counsel said that he had "nothing else to add." *Id.* at 38. Still, the court explained its understanding of the law on the criminal-history issue. In response, defense counsel reiterated its argument and asked the court not to count the convictions here: "[P]lease don't apply that same logic [from the statute of limitations context] for sentencing purposes. Basically, taking that approach[] over punishes our client and makes him responsible for very ancient convictions." *Id.* at 39. The court responded, "[s]o noted," before turning to the Government. *Id.* After the Government essentially reiterated the court's argument, the court denied the objection "based on [the court's] statement on the record, based on the Probation Officer's response in the Presentence Report and on the United States' argument." *Id.* at 40–41.

---

[2] Though Torres-Reyes's written motion to the district court appears to focus on a departure under U.S.S.G. § 4A1.3, on appeal, he challenges the alternatively presented argument that a variance should be granted. That is sensible because this Court cannot review a district court's decision not to depart, "unless the [district] court mistakenly believed that it lacked the authority to do so." *United States v. Louthian*, 756 F.3d 295, 306 (4th Cir. 2014).

But this discussion addressed only the *legal* objection to the criminal history calculation. It did not address the defendant's *equitable* argument for a variance: Even if the law technically means that the 1995 convictions are included in the criminal history calculation, doing so over-represents his actual criminal history and leads to a sentencing range that is too high in comparison to others. Without expressing any opinion on their ultimate merit, these arguments are non-frivolous and distinct from the legal objection. *See Blue*, 877 F.3d at 518–19. Thus, the court needed to separately consider these arguments for a variance. But this record fails to assure us that it did so.[3]

Circumstances can exist in which rejecting a legal objection makes clear that a related argument for a variance is also rejected. *See id.* at 521 ("recogniz[ing] that '[t]he context surrounding a district court's explanation may imbue it with enough content for us to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly'") (citing *United States v. Montes-Pineda*, 445 F.3d 375, 381 (4th Cir. 2006)); *United States v. Thompson*, 595 F.3d 544, 547 (4th Cir. 2010) ("It is true that in some cases, a district court's reasons for imposing a within-range sentence may be clear from the context, … including the court's statements to the defendant throughout the sentencing hearing"). But we do not find so here for three primary reasons.

---

[3] Torres-Reyes also argued that a variance was appropriate because of the state-court sentence he was serving. J.A. 42. And he argued, without trying to individualize the argument, that lower sentences lead to substantial savings to taxpayers. *Id.* But having found the district court otherwise reversibly erred, we need not decide whether the district court considered the defendant's argument about his state-court sentence or whether the district court had to consider the substantial-savings argument.

8

First, the district court's discussion of counting the 1995 drug convictions repeatedly emphasized the *legal* objection, not the request for a variance. This discussion took place over the course of four pages of the transcript from the sentencing hearing and was in the context of addressing the defendant's "objection." J.A. 38–41. And the court ruled by denying the "objection." *Id.* at 40. In doing so, the rationale provided by the district court addressed the legal objection and that rationale did not resolve the distinct equitable grounds for a variance.

Second, the district court did not describe the circumstances or characteristics present that, in its opinion, would outweigh the circumstances that the defendant argued justified a variance. While the Government discussed the repeated deportations and recidivism, *id.* at 43, the court did not adopt or convey the weight it placed on those arguments. Nor did the court find that this was a typical case adequately addressed by the Guidelines. *See Blue*, 877 F.3d at 518.

Lastly, the broader context of the sentencing hearing does not make it "'*patently obvious*'" that the court considered these grounds for a variance. *Id.* at 520−21 (quoting *Montes-Pineda*, 445 F.3d at 381). The court's limited explanation for the sentence here does not permit us to infer that the court considered the variance argument separately from the legal objection. *See United States v. Lynn*, 592 F.3d 572, 576 (4th Cir. 2010).[4]

---

[4] The district court's only explanation for the 37-month sentence was that it "adopt[ed] the findings in the Presentence Report as credible and reliable, and based upon those findings [it] calculated the imprisonment range prescribed by the Advisory Guidelines. [It] considered that range, as well as the other factors set out in 18 U.S.C. § 3553(a)." J.A. 44. The court also stated that it was sentencing the defendant "pursuant to (Continued)

9

*          *          *

Torres-Reyes argued that a variance was warranted because considering his 1995 convictions over-represented his criminal history and created unwarranted sentence disparities. These non-frivolous arguments for a variance required the district court to make a record indicating that the arguments were addressed. *See Ross*, 912 F.3d at 745. But the sentencing transcript here does not do so. We thus must vacate the sentence and send this case back for resentencing. In vacating this sentence, we express no view about the merit of Torres-Reyes's arguments for a variance or the appropriate length of a sentence for Torres-Reyes.

*VACATED AND REMANDED*

---

the Sentencing Reform Act of 1984 and in accord with the Supreme Court decision in *United States v. Booker*," 543 U.S. 220 (2005). *Id.* And so we cannot "say with any 'fair assurance' that the district court's explicit consideration of those arguments would not have affected the sentence imposed." *Lynn*, 592 F.3d at 585 (citation omitted) (quoting *Kotteakos v. United States*, 328 U.S. 750, 765 (1946)).